UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J.R.S., a minor, by her mother, ) | |
| K.N., ) | |
|     *Plaintiff*, ) | |
| ) | |
|     *vs.* ) | 1:14-cv-02006-JMS-DML |
| ) | |
| CAROLYN W. COLVIN, ) | |
| *Acting Commissioner of the* ) | |
| *Social Security Administration*, ) | |
|     *Defendant.* ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

K.N.,[1] on behalf of J.R.S., a minor, appeals the denial of J.R.S.'s application for social security supplemental security income disability benefits ("SSI benefits"). K.N. applied for SSI benefits on J.R.S.'s behalf on March 6, 2012, alleging a disability onset date of March 30, 2001. [Filing No. 12-6 at 2.] The claim was initially denied on April 17, 2012, and upon reconsideration. [Filing No. 12-3 at 2-3.] Administrative Law Judge Monica LaPolt (the "ALJ") held a hearing on July 23, 2013, and issued a decision on September 10, 2013, concluding that J.R.S. was not disabled. [Filing No. 12-2 at 12-32.] The Appeals Council denied a request for review, rendering the ALJ's decision the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner"), for the purposes of judicial review according to 20 C.F.R. § 404.981. [Filing No. 12-2 at 2.] K.N. filed this action on behalf of J.R.S. under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial. [Filing No. 1.]

---

[1] To protect the minor claimant's privacy pursuant to Federal Rule of Civil Procedure 5.2, the Court will also refer to J.R.S.'s mother behalf by her initials.

# I.
## APPLICABLE STANDARD OF REVIEW

"Social security disability benefits are designed for disabled workers, but low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

"[S]ince disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case." *Keys*, 347 F.3d at 991-92 (citing 20 C.F.R. § 416.924(d)). If the child is "not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether [the child] is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication." *Keys*, 347 F.3d at 992.

To determine whether the child is disabled, the ALJ considers all relevant evidence and the combined effect of any impairments on the child's overall health and functioning. 20 C.F.R. § 416.924(a). The regulations set forth a three-step process for evaluating child disability claims. 20 C.F.R. § 416.924(a).

At Step One, if the child is doing substantial gainful activity, as defined by the regulations, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a)-(b). If the child is not doing substantial gainful activity, the evaluation proceeds to Step Two. 20 C.F.R. § 416.924(a).

At Step Two, the ALJ considers the child's physical or mental impairments to see if the child has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(a). If the impairment or impairments are not severe, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a). If the impairment or impairments are severe, the evaluation proceeds to Step Three. 20 C.F.R. § 416.924(a).

At Step Three, the ALJ considers whether the child has an impairment or impairments that meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a). If the child has such an impairment and it meets the duration requirement, the child is disabled. 20 C.F.R. § 416.924(a). If the child does not have such an impairment, or if it does not meet the duration requirement, the child is not disabled. 20 C.F.R. § 416.924(a).

A child's impairments will functionally equal a listing if they result in either a "marked" limitation in at least two of six enumerated domains of functioning or an "extreme" limitation in at least one of the domains. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a). The six domains are as follows: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a. A "marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2).

This Court's role in reviewing a disability decision is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Moreover, "[a]n ALJ may not select and discuss only that evidence that favors [her] ultimate conclusion, but must articulate, at some minimum level, [her] analysis of the evidence to allow the [Court] to trace the path of [her] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits. Otherwise, the Court must generally remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.
## RELEVANT BACKGROUND[2]

J.R.S. was ten years old when an application for SSI benefits was filed on her behalf on March 6, 2012. [Filing No. 12-6 at 2.] The application alleges a disability onset date of March

---

[2] The briefs regarding J.R.S.'s request for review detail facts about medical treatment that J.R.S. has received. [Filing No. 17.] The Commissioner does not dispute the facts presented. [Filing No. 22.] Because those facts implicate sensitive and otherwise confidential medical information concerning J.R.S., the Court will simply incorporate the facts by reference herein and articulate material facts as needed to resolve the parties' arguments.

30, 2001. [Filing No. 12-6 at 2.] J.R.S.'s primary diagnosis as it relates to the issue raised on appeal is "specific learning disability." [*See, e.g.*, Filing No. 12-7 at 14.]

Using the sequential evaluation set forth by the SSA, the ALJ issued a decision on September 10, 2013, finding as follows:

- At Step One, the ALJ concluded that J.R.S. had not engaged in substantial gainful activity since the application date. [Filing No. 12-2 at 15.]

- At Step Two, the ALJ concluded that J.R.S. had the following severe impairments: a specific learning disability; asthma; obesity; and hearing impairment. [Filing No. 12-2 at 15.]

- At Step Three, the ALJ concluded that J.R.S. did not have an impairment, either singly or in combination, that met or medically equaled the severity of a listed impairment. [Filing No. 12-2 at 18.] The ALJ considered Listings 102.10 (Hearing Loss Not Treated With Cochlear Implantation), 103.03 (Asthma), 112.02 (Organic Mental Disorders), and 112.05 (Mental Retardation[3]). [Filing No. 12-2 at 18-19.]

- The ALJ further determined that J.R.S. does not have an impairment or combination of impairments that functionally equals the severity of a listed impairment. [Filing No. 12-2 at 20.] Specifically, the ALJ concluded that J.R.S. had marked limitations in one out of the six domains of functioning; less than marked limitations in three out of the six domains of functioning; and no impairments in all other domains of functioning. [Filing No. 12-2 at 23.]

---

[3] The Court notes that the term, "mental retardation," as used by the ALJ, has been replaced with the term "intellectual disability," but that does not affect the evaluation of such a claim under Listing 112.05. *See* 78 Fed. Reg. 46499-01, 46500 (Aug. 1, 2013).

- Because of these findings, the ALJ concluded that J.R.S. was not disabled. [Filing No. 12-2 at 32.]

J.R.S. requested that the Appeals Council review the ALJ's decision, but that request was denied on October 15, 2014. [Filing No. 12-2 at 1-4.] That decision is the final decision of the Commissioner for purposes of judicial review, and J.R.S. now seeks relief from this Court. [Filing No. 1.]

### III.
#### DISCUSSION

K.N. raises one issue on appeal. She argues that substantial evidence fails to support the ALJ's determination that J.R.S. did not meet or medically equal Listing 112.05 (Intellectual Disability), which requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." [Filing No. 17 at 5-8.] K.N. emphasizes evidence of J.R.S.'s full scale IQ score of 67 and contends that the ALJ erred by rejecting that score when considering Listing 112.05D. [Filing No. 17 at 6-7.]

In response, the Commissioner argues that the ALJ properly found that J.R.S. did not meet or medically equal the requirements of Listing 112.05. [Filing No. 22 at 7.] The Commissioner disputes that there is evidence in the record of a "*valid* IQ score" and emphasizes that the score to which K.N. points was labeled "non-interpretable," which the ALJ concluded meant invalid for purposes of Listing 112.05. [Filing No. 22 at 8 (original emphasis) (citing Filing No. 12-2 at 19).] The Commissioner claims that substantial evidence supports that conclusion because state agency doctors reviewed J.R.S.'s records and concluded that she did not meet any listings and was not disabled. [Filing No. 22 at 8 (citing Filing No. 12-7 at 46-58).]

In reply, K.N. disputes the Commissioner's conclusion that the identified IQ score was not valid for purposes of Listing 112.05D. [Filing No. 31 at 3-5.] She emphasizes that the Commissioner cites no authority for that conclusion and points out that despite listing the score as "non-interpretable," the doctor who gave that score diagnosed J.R.S. with "borderline intellectual functioning." [Filing No. 31 at 3-4 (citing Filing No. 12-7 at 43).]

The Court "will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Although [the Court] will not reweigh the evidence or substitute [its] own judgment for that of the ALJ, [it] will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *see Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (stating that an ALJ's decision will be upheld "so long as it is supported by substantial evidence and the ALJ built an accurate and logical bridge between the evidence and her conclusion") (citation and quotation marks omitted). An ALJ "must not succumb to the temptation to play doctor and make their own independent medical findings." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Listing 112.05 for an Intellectual Disability is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.05. Listing 112.05D requires "[a] valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1 § 112.05(D).

The relevant portion of the doctor's report at issue includes the following information about J.R.S.'s IQ:

| Full Scale IQ | 67* |
| --- | --- |
|  | *Non-interpretable |

[Filing No. 12-7 at 43.]  The doctor concluded that she "would offer the following diagnostic impressions with the understanding that [J.R.S.'s full scale IQ] was non-interpretable but her separate indexes were possible."  [Filing No. 12-7 at 43.]  One of the listed diagnoses was "Borderline Intellectual Functioning."  [Filing No. 12-7 at 43.]

The parties' dispute hinges on whether for purposes of meeting or medically equaling Listing 112.05D, J.R.S.'s "non-interpretable" IQ score of 67 was a "valid" score as required by that listing.  Neither party points the Court to any authority defining or interpreting "valid," "invalid, or "non-interpretable" in this context.  The ALJ's entire analysis of this issue when considering Listing 112.05D was that "there are no records in evidence to support that the claimant's impairments meet or equal this Listing and especially given that her IQ scores are uninterpretable because of the 24 point discrepancy."  [Filing No. 12-2 at 19.]  The ALJ cites no medical evidence or authority for her conclusion that J.R.S.'s "non-interpretable" IQ score was not "valid" for purposes of Listing 112.05D.

The Court concludes that the ALJ's treatment of the evidence at issue when considering whether J.R.S. met or medically equaled Listing 112.05D requires reversal.  While it is possible that the "non-interpretable" IQ score is not valid for purposes of the listing, the ALJ failed to build

a logical bridge for that conclusion. Moreover, by not relying on anything to support that conclusion, the ALJ appears to have impermissibly played doctor.[4] For these reasons, the Court must reverse the ALJ's decision and remand this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).

## IV.
## CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying K.N.'s application for SSI benefits on behalf of J.R.S. and **REMANDS** this matter for further proceedings consistent with this opinion. Final judgment will issue accordingly.

Date: October 28, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Patrick H. Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

---

[4] Although the Commissioner points to two state agency reports concluding that she contends show that J.R.S. did not meet or medically equal any listings and was not disabled, [Filing No. 22 at 8 (citing Filing No. 12-7 at 46-58)], the ALJ did not rely on that evidence in reaching her conclusion, and the Court will not rely on impermissible post-hoc rationale to affirm the ALJ's decision, *see Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).